**JONES TRIAL ATTORNEYS**
SEAN M. JONES, ESQ./LL.M.
Wells Fargo Plaza, 20th Floor
401 B Street, Suite 2010
San Diego, California 92101
T: (619) 732-6377
F: (619) 730-7111
E: Sean@JonesTrialAttorneys.com

Attorneys for Plaintiff,
MARGARET WILLETT

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARGARET WILLETT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ETHAN ZACHADNYK, an individual; CONTROL BLOCK, LLC, a Wyoming Limited Liability Company; COLONIAL STOCK TRANSFER, COMPANY, INC., a Utah Corporation, FUNR, INC. a Wyoming Corporation (Nominal Defendant) and DOES 1 through 20, Inclusive,<br><br>Defendants. | **CASE NO.** '25CV3439 RSH KSC<br><br>**COMPLAINT FOR:**<br>**1. Declaratory Relief**<br>**2. Injunctive Relief**<br>**3. Violation of California Corporations Code § 1201**<br>**4. Breach of Fiduciary Duty**<br>**5. Securities Fraud (Section 10(b) & Rule 10b-5)**<br>**6. Conversion**<br>**7. Negligence**<br>**8. Negligent Misrepresentation**<br>**9. Breach of Statutory Duty (CST – Transfer Agent Duties)**<br>**10. UCC Article 8 – Failure to Register Transfer (UCC § 8-401)**<br>**11. UCC Article 8 – Duty of Good Faith (UCC § 8-404)**<br>**12. UCC Article 8 – Transfer Agent Liability (UCC § 8-407)** |

**DEMAND FOR JURY TRIAL**

Plaintiff MARGARET WILLET, through counsel, complains and alleges against Defendants ETHAN ZACHADNYK, CONTROL BLOCK, LLC, and COLONIAL STOCK TRANSFER COMPANY, INC. as follows:

## I. INTRODUCTION

1. Plaintiff Margaret Willet ("Willett") brings this action to stop Defendant Ethan Zachadnyk ("Zachadnyk") – a minority shareholder and current Chief Executive Officer of FUNR Corporation ("FUNR") – from unlawfully asserting control over the corporation based on a stock purchase agreement signed on June 16, 2022, which never became effective and was explicitly reversed on April 7, 2025; announcing an unauthorized merger with AsphaltX, Inc.; and making false governance and ownership statements to the public and securities regulators.

2. Willett owns more than 5,000,000,000 shares of FUNR's total outstanding stock. FUNR's own SEC filings show that fewer than 10 billion shares are outstanding, making Willett the majority shareholder.

3. Zachadnyk's assertion of ownership and control is premised entirely on the June 16, 2022 Stock Purchase Agreement ("SPA") under which his company, Control Block, LLC ("Control Block") was required to pay Willett $600,000 as a condition precedent to acquiring any interest in Control Block. A true and correct copy of the June 16, 2022 Stock Purchase Agreement is attached as Exhibit 1 and incorporated by reference herein. Because neither Zachadnyk nor Control Block paid any portion of the $600,000, no legitimate transfer of the FUNR stock ever took place.

4. On April 7, 2025, Willett and Zachadnyk executed a subsequent agreement ("Reversal Agreement") confirming that the requisite payment under the

2022 agreement was never made, and that "to resolve the failure of payment under the Stock Purchase and reverse the transaction, Transferor [Zachadnyk] wishes to transfer to Transferee [Willett] and Transferee wishes to accept from Transferor, One-Hundred Percent (100%) of Transferor's membership interest in Control Block LLC which currently holds title to the Assets [5 billion shares of FUNR]." A true and correct copy of the April 7, 2025 Agreement is attached as Exhibit 2 and incorporated by reference herein.

5. Around the time of the SPA, Willett appointed Zachadnyk as Chairman and CEO of FUNR. During his time as CEO of FUNR, Zachadnyk withdrew approximately $65,000 in corporate funds from the FUNR operating account without shareholder approval. These funds, provided by Willett and other investors, were earmarked for paying vendors, transfer agents, and covering filing and recording fees due to the secretary of state and the SEC.

6. Defendant Colonial Stock Transfer Company, Inc. ("CST") served as the official transfer agent during the execution of the transfer of the shares subject to these agreements. As transfer agent, CST owed and continues to owe a fiduciary duty to FUNR and its shareholders to maintain accurate ownership tables and effectuate transfers upon notice and information. CST was aware of the SPA and the Reversal Agreement. Willett has made repeated efforts to communicate with CST to effectuate the restoration of her title to the 5 billion shares and her status as majority shareholder. As of the date of this filing, Willett's ownership status has not been corrected by CST.

7. CST's negligence and statutory violations directly enabled Zachadnyk's false claims of control, facilitated the filing of inaccurate SEC disclosures, and allowed Zachadnyk to pursue an unauthorized merger that could materially harm the company and its shareholders.

8. While the SPA was arguably never effective because of the failure of the condition precedent that purchaser (Zachadnyk /Control Block) must pay Willett

$600,000, the subsequent Reversal Agreement between the same parties dictates that the issue should be resolved by Zachadnyk transferring 100% interest in Control Block to Willett.

9. Under either scenario, as of April 7, 2025, Willett was undeniably the owner of the 5 billion shares of FUNR stock involved in the SPA. Either the original SPA was invalid, and she retained the 5 billion shares the entire time, or the shares were returned to her on April 7, 2025 by virtue of her gaining ownership of Control Block, which held at least colorable title to the shares following the SPA.

10. And under either scenario, statements by Zachadnyk subsequent to April 7, 2025 alleging a majority share in FUNR, such as the quarterly statement to the SEC filed on June 30, 2025, were fraudulent. A true and correct copy of FUNR's Quarterly Report for Q2, filed on June 30, 2025, is attached as Exhibit 3 and incorporated by reference.

11. Zachadnyk's public announcement of a merger with AsphaltX, Inc. on October 14, 2025 also follows his formal acknowledgment of the illegitimacy of the SPA and his subsequent written agreement to restore the 5 billion shares to Willett through the transfer of 100% interest in Control Block.

12. By undertaking the above actions, Zachadnyk has:

a. Publicly announced a purported FUNR merger without shareholder approval;

b. Represented himself to the SEC as the "control person" of Control Block;

c. Caused or permitted false statements to appear in FUNR's quarterly filings;

d. Misled investors regarding the governance and ownership of FUNR; and

e. Acted ultra vires and in breach of his fiduciary duties as CEO.

13. Willett seeks:

a. Declaratory relief confirming Willett's ownership of the 5 billion shares at issue in the SPA and Reversal Agreement (Exhibits 1 and 2);

b. A judicial declaration that Willett is the majority shareholder of FUNR by virtue of her 100% ownership of Control Block – or in the alternative, by virtue of her retention of the 5 billion shares irrespective of the SPA which was never consummated because the condition prerequisite to the transfer of the shares never occurred;

c. Injunctive relief a) halting the unauthorized merger between FUNR and AsphaltX; and b) removing Zachadnyk as Chairman and CEO of FUNR and instating Willett as interim CEO;

d. Correction of false SEC disclosures; and

e. Damages as appropriate.

## II. PARTIES

14. Plaintiff Margaret Willett is an individual residing in California, a member of Control Block, LLC, and the majority shareholder of FUNR, Inc.

15. Defendant Control Block, LLC is a Wyoming limited liability company that purportedly owns 5,000,000,000 shares of FUNR. Pursuant to the Reversal Agreement between Zachadnyk and Willett executed on April 7, 2025, Willett is the 100% owner of Control Block, LLC.

16. Defendant Ethan Zachadnyk is the Chairman and CEO of FUNR, residing in California. He is a minority shareholder of FUNR and was the sole owner of Control Block, LLC up until his agreement to transfer to Willett "100% of [his] right, title and interest in, under and to Control Block, LLC" on April 7, 2025.

17. Defendant Colonial Stock Transfer Company, Inc. is a Utah Corporation with operations across the United States, including in California.

18. Defendant FUNR Corporation is a Wyoming corporation with principal operations in San Diego, California. FUNR is nominally joined so the Court may issue full relief.

19. Doe Defendants 1–20 are persons or entities who assisted Zachadnyk or CST.

## III. JURISDICTION AND VENUE

20. Federal question jurisdiction exists under 28 U.S.C. § 1331 because Willett alleges violations of the Securities Exchange Act, including Section 10(b) and SEC Rule 10b-5.

21. Supplemental jurisdiction exists under 28 U.S.C. § 1367 for state-law claims.

22. Venue is proper under 28 U.S.C. § 1391 because Defendants reside here and substantial events occurred in this district. Additionally, both the SPA and the Reversal Agreement (Exhibits 1 and 2 respectively) contain a forum selection clause, which reads,

> "6.7 Governing Law; Venue; Jurisdiction. The laws of the State of California (irrespective of its choice of law principles) will govern the validity of this Agreement and the Pledge Agreement, the construction of its terms, and the interpretation and enforcement of the rights and duties of the parties hereto. This Agreement shall be enforceable in any court of competent jurisdiction. In furtherance of and not in limitation of the foregoing, **the parties hereto (i) agree and consent to the personal jurisdiction and venue of the state and Federal courts sitting in San Diego County, California in any action or proceeding arising out of or connected in any way with this Agreement,** (ii) irrevocably waive, to the fullest extent permitted by law, any claim that any such proceeding brought in such a court has been brought in an inconvenient forum, and (iii) agree that service of process in any such action or proceeding

> will be sufficient if sent by certified mail, return receipt requested, to applicable address set forth above, and that such service shall constitute "personal service," and further agree to the invocation of said jurisdiction by service of process in any other manner authorized by law." **(Emphasis added).**

## IV. FACTUAL ALLEGATIONS

23. Willett realleges and incorporates each of the foregoing paragraphs as if set forth fully herein.

24. On March 25, 2022, Willett received issuance of 5 billion shares of FUNR stock. This represented the first issuance of any shares of the company's stock.

25. Prior to the events discussed in this Complaint, Zachadnyk served as an accountant for Willett.

26. Upon becoming the majority shareholder of FUNR, Willett appointed Zachadnyk as Chairman and CEO and discussed a sale of her FUNR shares to Zachadnyk.

27. On June 16, 2022, Willett and Zachadnyk entered into a Stock Purchase Agreement (SPA) whereby Zachadnyk would pay Willett $600,000 and receive Willett's 5 billion shares of FUNR in exchange. Per the agreement, the shares were to be transferred from Willett to Zachadnyk's company, Control Block, LLC. *See* Exhibit 1.

28. Zachadnyk never made any payment to Willett whatsoever in connection with the SPA.

29. On April 7, 2025, Willett and Zachadnyk entered into a Reversal Agreement wherein the parties expressly acknowledged that that the terms contemplated in the SPA were not performed and that a reversal of that agreement was necessary and appropriate. *See* Exhibit 2.

30. Rather than simply rescinding the SPA, Willett and Zachadnyk agreed, per the Reversal Agreement, that Zachadnyk would transfer 100% of his interest in Control Block to Willett. Because Control Block owned the 5 billion FUNR shares, the

transfer of Control Block ownership to Willett would effectively return the FUNR shares to her and restore her as majority shareholder of FUNR.

31. Willett and Zachadnyk also discussed some additional terms whereby Zachadnyk would pay for the costs of reversing the SPA, but no agreement was reached on the financial terms.

32. On June 30, 2025, FUNR filed a quarterly report with the SEC, listing Zachadnyk as the Control Person for Control Block, and effectively identifying him as holding a majority stake in the corporation. *See* Exhibit 3.

33. On October 14, 2025, Zachadnyk issued a public press release via OTC Disclosure & News Service, stating:

> FUNR (the Company) (OTCPK:FUNR) announces that today the Company has finalized an agreement to merge with AsphaltX, Inc., an emerging leader in advanced road infrastructure solutions. The transaction marks the beginning of a new chapter in FUNR's strategy to align with transformative technologies that can scale globally. "AsphaltX, Inc.'s breakthrough in ionic liquid technology has the potential to redefine how the world thinks about roads," said Ethan Zachadnyk, CEO of FUNR. "while details will be shared in the near future, this partnership positions FUNR at the forefront of a rapidly evolving sector."

34. Throughout the events discussed in this Complaint, Colonial Stock Transfer Company, Inc. (CST) served as the official transfer agent for FUNR.

35. CST was aware of the Reversal Agreement and its ramifications – namely making Willett the "control person" of Control Block and restoring her as the majority shareholder of FUNR.

36. CST failed to uphold its duties to FUNR's shareholders by maintaining and reporting accurate ownership tables and thereby enabled Zachadnyk's fraudulent activities.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### DECLARATORY RELIEF (28 U.S.C. § 2201)

37. Willett realleges and incorporates each of the foregoing paragraphs as if set forth fully herein.

38. An actual controversy exists regarding ownership of Control Block, the ownership of FUNR shares, and the validity of the SPA and the purported merger.

39. Willett seeks declarations that:

a. Willett owns 100% of Control Block;

b. Control Block owns 5,000,000,000 FUNR shares;

c. Willett is the majority shareholder of FUNR;

d. Zachadnyk is not the control person of Control Block, and was not as of April 7, 2025; and

e. The purported merger between FUNR and AsphaltX is void.

### SECOND CAUSE OF ACTION

### INJUNCTIVE RELIEF

40. Willett realleges and incorporates all prior paragraphs as though fully set forth herein.

41. Injunctive relief is necessary to prevent ongoing and imminent harm.

42. Willett seeks temporary, preliminary, and permanent injunctive relief under the Court's equitable powers, including pursuant to 28 U.S.C. § 2202, Federal Rule of Civil Procedure 65, and the Court's inherent authority to prevent ultra vires, unlawful, or fraudulent corporate acts.

43. Willett has no adequate remedy at law because the injuries threatened by Defendants' conduct—including loss of corporate control, unauthorized merger activity, false public disclosures, and investor confusion—are irreparable and cannot be fully compensated by monetary damages alone.

44. Willett is likely to succeed on the merits.

45. Each of the claims alleged in this Complaint independently establishes Willett's entitlement to injunctive relief.

46. Willett's claims in this Complaint are supported by detailed written and signed instruments between the parties as well as an indisputable timeline of events established by signed contracts and documents on file with government agencies including the SEC and the Secretary of State.

**A. Willett Will Suffer Irreparable Harm in the Absence of an Injunction**

47. Willett realleges and incorporates all prior paragraphs as though fully set forth herein.

48. Without injunctive relief, Willett will continue to suffer irreparable harm because:

a. Corporate governance cannot function while false ownership appears in the transfer agent's, CST, ledger and public filings.

b. Zachadnyk is actively misusing corporate authority, including announcing or attempting to effectuate an unauthorized merger.

c. FUNR's SEC filings contain false ownership and control information, exposing the company and shareholders to regulatory and market risk.

d. Willett's majority ownership rights will be nullified or materially impaired, causing loss of control that cannot be remedied by damages.

e. Investors are being misled, and such market confusion typically constitutes irreparable harm.

f. CST's failure to correct its shareholder ledger enables Zachadnyk to perpetuate fraud and exceed his authority.

49. These harms threaten the corporate structure, market confidence, and Willett's voting and governance rights in ways that cannot be compensated post hoc.

50. The balance of equities strongly favors Willett.

51. Willett seeks only accurate shareholder records, truthful disclosures, and lawful corporate governance.

52. Defendants have no legitimate interest in continuing unlawful conduct, maintaining false records, or exercising corporate control they do not possess.

53. Preventing Zachadnyk from claiming authority he does not have and compelling CST to correct its ledger imposes no hardship on Defendants but protects Willett and the public.

**B. The Public Interest Favors Injunctive Relief**

51. FUNR is a publicly traded corporation. The public has an interest in:

a. Accurate disclosures to the market;

b. Lawful corporate governance;

c. Prevention of fraud;

d. Compliance with UCC Article 8 and SEC regulations; and

e. Integrity of corporate control and shareholder rights.

52. An injunction will restore proper corporate functioning and protect investors and the marketplace.

**C. Requested Injunctive Relief**

53. Willett requests that the Court issue temporary, preliminary, and permanent injunctions as follows:

**D. Relief Requested as to Defendant Zachadnyk:**

54. Enjoining Zachadnyk from:

a. Representing that he owns or controls Control Block or any portion of its 5,000,000,000 shares;

b. Acting or holding himself out as the "control person" of Control Block;

c. Approving, announcing, or attempting to effect any merger or reorganization of FUNR without majority shareholder approval;

d. Making any statements or filings that conflict with the Reversal Agreement; and

e. Interfering with Willett's majority rights or governance of FUNR.

**E. Relief Requested as to Defendant CST:**

55. Ordering CST to:

a. Register and reflect Willett as the 100% owner of Control Block;

b. Register Control Block as the lawful owner of the 5,000,000,000 FUNR shares;

c. Remove any false or outdated entries identifying Zachadnyk as owner or control person;

d. Provide corrected ownership information to FUNR and its counsel for use in public disclosures; and

e. Cease maintaining or disseminating inaccurate shareholder information.

**F. Willett is Entitled to All Forms of Equitable Relief Necessary**

56. Willett requests:

a. A TRO;

b. A preliminary injunction;

c. A permanent injunction;

d. Declaratory relief confirming Willett's rights; and

e. Any further equitable relief necessary to prevent continuing harm.

## THIRD CAUSE OF ACTION
## VIOLATION OF CALIFORNIA CORPORATIONS CODE § 1201 (ULTRA VIRES MERGER ACTIONS)
## (As to Zachadnyk)

57. Willett realleges and incorporates all prior paragraphs as though fully set forth herein.

58. California Law requires approval of the majority of outstanding shares for any corporate merger.

59. California Corporations Code § 1201(a) provides that a corporation may not consummate or approve a merger unless the principal terms of the merger are approved by the outstanding shares of each corporation.

60. Section 1201(a) further requires approval by the holders of a majority of the outstanding shares, unless an exception not applicable here applies.

61. A merger approved without the required shareholder vote is void, unauthorized, and ultra vires.

62. Willett, through Control Block, ss the majority shareholder of FUNR.

63. Willett alleges, and FUNR's own Q1 and Q2 filings confirm, that fewer than 10 billion shares of FUNR are issued and outstanding.

64. Control Block owns 5,000,000,000 of these shares.

65. Accordingly, Willet, as the 100% owner of Control Block, is the majority shareholder of FUNR and holds the determinative vote for any merger under § 1201.

66. Zachadnyk lacked any ownership or voting control to approve, announce, or represent a merger.

67. Zachadnyk is a minority shareholder and CEO of FUNR.

68. Zachadnyk's only claimed basis for control was the SPA, under which he purportedly would acquire the shares of FUNR through Control Block—but

Zachadnyk never paid the $600,000 required as a condition precedent to the SPA taking effect.

69. Zachadnyk then executed the Reversal Agreement, which:

a. Confirmed he never obtained ownership;

b. Restored (or confirmed) Willett's 100% membership interest in Control Block; and

c. Eliminated any conceivable basis for Zachadnyk to assert voting control over the 5-billion-share block.

70. Zachadnyk therefore had no voting control, no ownership, no authority, and no legal basis to approve or announce a merger on behalf of FUNR.

71. Zachadnyk announced and/or authorized a merger without shareholder approval.

72. Despite lacking authority, Zachadnyk:

a. Publicly announced a purported merger involving FUNR;

b. Communicated, directly or indirectly, to investors and the market that a merger was authorized or approved;

c. Represented that corporate action had been taken consistent with a merger;

d. Implied that the voting shares necessary to approve a merger had been obtained; and

e. Allowed or caused the corporation to disseminate statements indicating that corporate reorganization measures were underway.

73. None of these actions were authorized.

74. Zachadnyk did not convene a shareholder meeting, solicit votes, or comply with statutory requirements for merger approval.

75. Zachadnyk concealed or omitted material information—including the Reversal Agreement—in order to create a false appearance of authority.

76. Zachadnyk's actions were ultra vires and void under California law.

77. Because Zachadnyk lacked the voting majority required by § 1201, any purported merger-related actions he took are:

a. Ultra vires (beyond his authority);

b. Void or voidable at the election of the majority shareholder;

c. Illegal under California corporate law; and

d. Harmful to the corporation and its shareholders.

78. Zachadnyk's ultra vires acts also constitute violations of the duty of loyalty, duty of candor, and duty of good faith, but are pleaded separately as independent claims.

79. Zachadnyk's unauthorized merger activity caused concrete harm.

80. Zachadnyk's unlawful conduct caused or contributed to:

a. Market confusion regarding FUNR's corporate structure;

b. Investor reliance on false representations;

c. Instability in FUNR's governance;

d. Exposure to potential regulatory scrutiny;

e. Damage to shareholder confidence;

f. The need for Willett to seek emergency injunctive relief; and

g. Financial costs, including legal fees, required to unwind or prevent unauthorized merger activity.

81. Zachadnyk's actions were a substantial factor in causing Willett's injuries.

82. Willett is entitled to declaratory, injunctive, and monetary relief.

83. Willett seeks:

a. A declaration that Zachadnyk's purported merger actions violate California Corporations Code § 1201;

b. A declaration that any merger Zachadnyk announced or approved is void;

c. An injunction prohibiting Zachadnyk from representing that any merger has been or may be approved without the majority vote of shareholders;

d. An injunction restraining Zachadnyk from issuing or disseminating misinformation regarding corporate actions requiring shareholder approval;

e. Compensatory damages flowing from Zachadnyk's ultra vires conduct;

f. Fees and costs where authorized; and

g. Further relief as the Court deems proper.

**FOURTH CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

**(As to Zachadnyk)**

84. Willett realleges and incorporates all prior paragraphs as though fully set forth herein.

85. Zachadnyk owed fiduciary duties as CEO, Corporate Officer, Director, and Insider of FUNR.

86. At all relevant times, Zachadnyk served as Chief Executive Officer and a director of FUNR Corporation, a publicly traded company.

87. As CEO and a corporate fiduciary, Zachadnyk owed FUNR and its shareholders—including majority shareholder Willett, through Control Block—the highest duties recognized by law, including:

a. Duty of loyalty;

b. Duty of care;

c. Duty of candor and full disclosure;

d. Duty of good faith and fair dealing;

e. Duty to avoid self-dealing and conflicts of interest;

f. Duty to act within the scope of lawful corporate authority; and

g. Duty to refrain from misusing corporate machinery for personal gain.

88. These duties apply with heightened force when:

a. A corporate officer impacts voting control,

b. Represents ownership to the market, or

c. Takes actions that alter corporate governance, such as mergers.

89. Zachadnyk was also a fiduciary to minority and majority shareholders alike and owed duties to avoid misleading regulators, shareholders, and the market.

90. Zachadnyk breached the duty of loyalty by advancing his own interests over FUNR's.

91. Zachadnyk's conduct was motivated by personal gain and consolidation of control, not by the best interests of FUNR or its shareholders.

92. Zachadnyk sought to usurp corporate power by:

a. Misrepresenting himself as the owner or "control person" of the 5-billion-share block;

b. Attempting to shift corporate control away from the rightful majority owner (Willett);

c. Acting as though he possessed voting power he did not hold;

d. Using false ownership claims to position himself as the unilateral decision-maker on mergers and strategic direction; and

e. Concealing Reversal Agreement because it confirmed Willett's control, not his.

93. These actions constituted classic self-dealing, were done without disclosure, and directly harmed the corporation.

94. Zachadnyk breached the duty of candor and good faith by misrepresenting ownership and control in public filings.

95. Zachadnyk knew that:

a. He never paid the $600,000 required under the SPA;

b. The SPA never became effective;

c. Ownership of Control Block (and its 5 billion shares) never passed to him; and

d. On April 7, 2025, he executed the binding Reversal Agreement confirming Willett regained 100% ownership through Control Block.

96. Despite this, Zachadnyk caused or allowed FUNR's publicly filed disclosures, including quarterly SEC filings, to falsely identify:

a. Control Block as being controlled or owned by Zachadnyk;

b. Zachadnyk as FUNR's "control person"; and

c. Zachadnyk as holding voting power he did not possess.

97. Zachadnyk's concealment and misrepresentation of material facts violated his fiduciary duty of candor to Willett, to FUNR, and to the market.

98. Zachadnyk breached the duty of care by authorizing an unauthorized merger.

99. California Corporations Code § 1201 requires approval by the majority of outstanding shares for any corporate merger.

100. Willett, through Control Block, holds the majority interest in FUNR.

101. Zachadnyk knew he lacked the authority to approve or announce a merger but did so anyway to Willett's detriment.

102. Zachadnyk's actions fell far below the "ordinary prudent person" standard and constituted a breach of the duty of care.

103. Zachadnyk also breached his fiduciary duties by misusing corporate machinery.

104. Zachadnyk abused his CEO position as alleged herein.

105. This misuse of corporate authority constitutes a breach of fiduciary duty as recognized by well-established corporate law principles.

106. Zachadnyk's breaches directly harmed Willett and FUNR.

107. Zachadnyk's breaches directly caused:

a. Impairment of Willett's governance and voting rights;

b. Confusion in the market and among investors;

c. Materially false public filings;

d. Loss of corporate stability;

e. The need for emergency injunctive relief;

f. Damage to FUNR's reputation;

g. Exposure to potential regulatory action; and

h. Financial injury, including legal fees and costs to correct CST's records.

108. Zachadnyk's conduct was a substantial factor in causing Willett's injuries.

109. Willett is entitled to damages and equitable relief.

110. Willett seeks:

a. Compensatory damages;

b. Disgorgement of any benefits received by Zachadnyk;

c. Declaratory relief confirming Willett's majority ownership in FUNR;

d. Injunctive relief preventing Zachadnyk from representing that he owns or controls any FUNR shares;

e. An order barring Zachadnyk from approving or announcing mergers absent shareholder approval;

f. Attorney's fees and costs where recoverable; and

g. Such further relief as the Court deems just.

**FIFTH CAUSE OF ACTION**

**CONVERSION**

**(As to Zachadnyk)**

111. Willett realleges and incorporates all prior paragraphs as though fully set forth herein.

112. FUNR maintains a corporate bank account into which funds are placed for paying day-to-day administrative costs, including filing and recording fees and transfer agency fees.

113. First as FUNR's accountant and later as its CEO, Zachadnyk was granted access to FUNR's banking information.

114. Between 2022 and 2025, Zachadnyk withdrew approximately $65,000 in funds from FUNR's corporate account without shareholder approval, effectively converting title of those funds from FUNR to Zachadnyk.

115. As a result of Zachadnyk's actions, FUNR accumulated debts and repeatedly risked insolvency, requiring MW to continue putting money into the account to prevent default.

**SIXTH CAUSE OF ACTION**

**Securities Fraud (Section 10(b) & Rule 10b-5 of the Securities Exchange Act**

**(As to Zachadnyk)**

116. Willett realleges and incorporates all prior paragraphs as though fully set forth herein.

117. Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, prohibit any person, in connection with the purchase or sale of a security, from:

a. Employing any device, scheme, or artifice to defraud;

b. Making any untrue statement of a material fact, or omitting to state a material fact necessary to make statements not misleading; or

c. Engaging in any act, practice, or course of business that operates as a fraud upon any person.

118. These anti-fraud provisions apply to officers, directors, control persons, insiders, and any individual who makes materially false statements concerning corporate governance, ownership, or control of publicly traded securities.

119. Zachadnyk made material misrepresentations and omissions regarding FUNR's ownership and control structure.

120. FUNR is a publicly traded corporation, and its corporate control, governance structure, and majority share ownership are material facts to investors, regulators, and the market.

121. Zachadnyk repeatedly made materially false statements as alleged throughout this Complaint.

122. These representations were incorporated into, or formed the basis of, publicly disseminated corporate disclosures, including FUNR's quarterly filings, market-facing announcements, and investor communications.

123. Zachadnyk's misrepresentations were material because:

a. Control of 5 billion shares determines voting power, management control, and the ability to authorize mergers;

b. Investors rely on accurate control-person disclosures;

c. SEC filings depend on correct ownership information; and

d. Market participants make decisions based on who controls the company.

124. Zachadnyk acted with actual knowledge, or at minimum reckless disregard, that his statements were false.

a. Zachadnyk knew he never paid the $600,000 required by the SPA.

b. Zachadnyk knew the SPA never became effective.

c. Zachadnyk signed the Reversal Agreement, expressly confirming Willett's ownership.

d. Zachadnyk knew that Control Block was not under his control.

e. Zachadnyk intentionally concealed the Reversal Agreement from FUNR's filings.

f. Zachadnyk knew that the market would interpret his statements as meaning he possessed the voting rights of the 5-billion-share block of FUNR stock.

g. Zachadnyk knowingly approved or permitted false information to appear in SEC filings.

125. Zachadnyk's conduct constitutes intentional market manipulation and satisfies the scienter requirements of Section 10(b) and Rule 10b-5.

126. Zachadnyk's misrepresentations were made "in connection with" the purchase or sale of securities.

127. Zachadnyk's false statements concerned the ownership and control of publicly traded FUNR securities, including the 5-billion-share block.

128. Under established case law, misrepresentations concerning corporate control, the ability to approve mergers, and the identity of control persons are quintessential Rule 10b-5 violations.

129. Zachadnyk's conduct operated as a fraud on Willett, Control Block, the market, and FUNR shareholders.

130. Zachadnyk's fraudulent conduct impaired Willett's governance rights, enabled unauthorized corporate actions, and triggered regulatory and market confusion.

131. Willett has been harmed as alleged herein.

132. Zachadnyk's fraud was a proximate and foreseeable cause of these damages.

133. Willett is entitled to relief.

134. Willett seeks:

a. Compensatory damages;

b. Rescissory damages if appropriate;

c. Disgorgement of any benefits Zachadnyk received;

d. Injunctive relief preventing future misrepresentations;

e. Declaratory relief confirming Willett's ownership;

f. Costs and attorney's fees where authorized; and

g. Any other relief the Court deems just.

**SEVENTH CAUSE OF ACTION**

**NEGLIGENCE**

**(As to CST)**

135. Willett realleges and incorporates all prior paragraphs as though fully set forth herein.

136. CST owed Willett a duty of care as FUNR's transfer agent.

137. CST is and was at all relevant times the official transfer agent of FUNR, responsible for maintaining the corporation's shareholder ledger, registering and recording transfers, and ensuring that stock ownership records are accurate, current, and consistent with the corporation's governing documents and shareholder agreements.

138. Transfer agents owe shareholders and issuers a well-established duty of reasonable care in:

a. Maintaining accurate shareholder records;

b. Registering valid transfers upon receipt of correct documentation;

c. Declining to register transfers that are improper, incomplete, or unsupported;

d. Acting with due diligence upon receiving notice of inaccurate records;

e. Preventing unauthorized persons from being recorded as owners or control persons; and

f. Communicating and implementing corrections when valid agreements affecting ownership are submitted.

139. These duties arise from:

a. State common law governing transfer agents;

b. UCC Article 8 (particularly §§ 8-401, 8-404, 8-407);

c. SEC regulations and industry standards for registered transfer agents;

d. FUNR's own publicly disclosed reliance on CST to maintain accurate ownership records; and

e. The foreseeability that errors by the transfer agent would cause serious harm to issuers and shareholders.

140. As the holder of FUNR's official shareholder ledger, CST occupied a special position of trust, and Willett reasonably relied on CST to perform its obligations competently.

141. CST breached its duty of care by failing to update ownership records and ignoring valid documentation.

142. Willett provided CST—or CST otherwise received—valid written documentation demonstrating:

a. That the SPA never became effective because Zachadnyk never paid the required $600,000;

b. That ownership of the 5 billion FUNR shares therefore remained entirely with Willett;

c. That on April 7, 2025, Zachadnyk executed the Reversal Agreement expressly confirming that Willett retained the shares, and was entitled to be recognized as holding 100% of the membership interest in Control Block; and

d. That Willett, through Control Block, remained the sole owner of 5,000,000,000 shares of FUNR.

143. CST failed to register the ownership interest reflected in the Reversal Agreement and failed to correct its shareholder ledger despite having all necessary documentation to do so.

144. CST further failed to investigate or correct inaccurate filings or ownership entries, even after:

a. CST knew the SPA had not closed;

b. CST had notice of the Reversal Agreement;

c. CST knew that Zachadnyk was making public statements claiming control of Control Block after the signing of the Reversal Agreement;

d. CST was aware that FUNR's quarterly filings listed Zachadnyk as "control person" of a share block he did not own; and

e. CST knew, or should have known, that the filings were false.

145. CST's failures fall below the standard of care for transfer agents.

146. CST's conduct enabled Zachadnyk's false claims of corporate control, facilitated the dissemination of inaccurate information in FUNR's quarterly reports,

and directly contributed to Zachadnyk's ability to announce and pursue an unauthorized corporate merger.

147. CST's negligence was a substantial factor in causing Willett's damages.

148. CST's failure to maintain accurate records and register the Reversal Agreement was a substantial factor in causing Willett's harm as alleged herein.

149. Had CST acted with reasonable care, Zachadnyk would not have been able to hold himself out as control person, could not have initiated a purported merger, and could not have misled the public or regulators.

150. Willett has suffered actual damages.

151. Willett seeks damages in an amount to be proven at trial, including:

a. Costs of legal action to correct shareholder records;

b. Harm to corporate governance stability;

c. Attorney's fees incurred due to CST's negligence;

d. Damages related to false market disclosures; and

e. Any consequential damages flowing from CST's conduct.

152. Willett also seeks **injunctive relief** compelling CST to:

a. Correct the ledger;

b. Recognize Willett as the 100% owner of Control Block;

c. Register all 5 billion shares of FUNR in Control Block's name; and

d. Remove any indication that Zachadnyk is control person.

**EIGHTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

**(As to CST)**

153. Willett realleges and incorporates all prior paragraphs as though fully set forth herein.

154. CST made misrepresentations in its shareholder records and communications.

155. CST is the registered transfer agent for FUNR and is responsible for maintaining FUNR's official shareholder ledger, registering stock transfers, and providing accurate ownership information to the issuer, regulators, and shareholders.

156. CST prepared, maintained, and disseminated shareholder records that identified Zachadnyk as the "control person" or beneficial owner of Control Block's 5,000,000,000 shares despite having notice, information, and documentation to the contrary.

157. CST's published shareholder records—including those provided for preparation of quarterly SEC filings—falsely stated, implied, or allowed others to state that Zachadnyk was the control person for Control Block and/or the owner of its shares.

158. CST provided false information without exercising reasonable care.

159. CST's conduct fell below the standard of care for transfer agents, discussed in detail above.

160. CST's failure to exercise reasonable care caused inaccurate ownership information to be incorporated into public filings, internal corporate records, and communications with shareholders.

161. CST intended or could reasonably expect that Willett and others would rely on these representations.

162. CST knew or should have known that FUNR, its officers, its shareholders, and the market would rely on CST's records, Willett would rely on CST to maintain accurate records of their majority ownership; regulators and investors would rely on CST's ownership information, and misidentifying Zachadnyk as control person would enable him to engage in unauthorized corporate actions.

163. CST knew that its misstatements would be incorporated into FUNR's quarterly filings, relied upon by investors, and used by Zachadnyk to falsely assert corporate control.

164. Willett reasonably relied on CST's representations.

165. Willett and Control Block reasonably relied on CST to maintain accurate shareholder records and register the Reversal Agreement.

166. Willett relied on CST's duty-bound role and on CST's implied representation that it had competently discharged its statutory and contractual responsibilities.

167. Willett expected that once CST received proper documentation, it would correct records and prevent unauthorized ownership claims.

168. CST's misrepresentations were a substantial factor in causing Willett's damages.

169. CST's negligent misrepresentations and omissions were a substantial factor in Willett's harm as alleged herein.

170. Willett suffered foreseeable damages, including legal expenses, impairment of governance rights, disruptions to corporate functioning, and damages associated with incorrect public disclosures.

171. Willett is entitled to damages and corrective relief.

**NINTH CAUSE OF ACTION**

**BREACH OF STATUTORY DUTY**

**(As to CST)**

172. Willett realleges and incorporates all prior paragraphs as though fully set forth herein.

173. CST is a registered transfer agent and subject to statutory duties.

174. CST is the duly designated transfer agent for FUNR and, as such, is subject to:

a. Federal statutory duties under the Securities Exchange Act of 1934, including 15 U.S.C. § 78q-1;

b. SEC transfer agent regulations (17 C.F.R. § 240.17Ad-1 through 17Ad-20);

c. Uniform Commercial Code Article 8, including §§ 8-401, 8-404, and 8-407;

d. State common-law duties applicable to transfer agents to maintain accurate shareholder records and register valid share transfers; and

e. Industry standards requiring diligence and accuracy in maintaining issuer and shareholder records.

175. As a registered transfer agent, CST has statutory obligations including, but not limited to:

a. Maintaining accurate securityholder records;

b. Timely registering valid transfers;

c. Refusing to register transfers when proper documentation is lacking;

d. Completing transfers only upon receipt of proper instructions;

e. Correcting inaccurate or misleading entries once aware of them;

f. Exercising due diligence when receiving notice of competing ownership claims; and

g. Acting in accordance with the issuer's governing documents and valid agreements.

176. CST's obligations extend to shareholders, issuers, beneficial owners, and control persons whose rights depend on the accuracy of transfer agent records.

177. CST had statutory duties triggered by the Reversal Agreement and related ownership documents, but failed to take appropriate actions, as alleged throughout this Complaint.

178. For example, CST:

a. Violated UCC Article 8 and SEC Transfer Agent Regulations;

b. Failed to register a valid transfer — UCC § 8-401 (alleged in detail below);

c. Failed to act in good faith — UCC § 8-404 (alleged in detail below); and

d. Has transfer agent liability for issuer duties — UCC § 8-407 (alleged in detail below).

179. CST's conduct violated federal securities regulations governing transfer agent conduct.

180. CST's breach of statutory duties was a proximate cause of Willett's harm.

181. CST's statutory violations enabled Zachadnyk to represent himself as the owner and control person of Control Block, cause FUNR to file quarterly statements containing false ownership information, publicly announce a merger without shareholder approval, exercise powers he did not possess, and create instability and confusion among investors and regulators.

182. CST's breaches were a substantial factor in Willett's harm.

183. Willett is entitled to damages and equitable relief.

184. As a result of CST's statutory violations, Willett seeks:

a. Compensatory and consequential damages;

b. Costs and reasonable attorney's fees (where recoverable);

c. Declaratory relief confirming Willett's ownership;

d. Injunctive relief compelling CST to:

i. Correct the shareholder ledger;

ii. Register Willett as the 100% owner of Control Block;

iii. Accurately record ownership of the 5 billion shares; and

iv. Remove Zachadnyk as control person from CST-maintained records.

185. Willett also seek any additional or further relief the Court deems just and proper.

## TENTH CAUSE OF ACTION

## FAILURE TO REGISTER TRANSFER (UCC § 8-401)

## (As to CST)

186. Willett realleges and incorporates all prior paragraphs as though fully set forth herein.

187. CST had a statutory duty under UCC § 8-401 to register a valid transfer.

188. CST is the registered transfer agent for FUNR and is responsible for maintaining FUNR's shareholder ledger and registering stock transfers.

189. Under UCC § 8-401(a), a transfer agent must register a share transfer when:

a. The security is endorsed or the transfer instruction is effective;

b. Reasonable assurance is provided that the instruction is genuine;

c. All applicable taxes and fees, if any, are paid;

d. Registration does not violate a restriction on transfer; and

e. All conditions of the issuer to registration have been complied with.

190. Under UCC § 8-401(b), if the transfer agent refuses to register a valid transfer, and the refusal is wrongful, the transfer agent is liable to the rightful owner for any resulting loss.

191. CST, as transfer agent, is legally bound to perform these statutory functions on behalf of the issuer.

192. Willett delivered valid, enforceable transfer instructions to CST.

193. On April 7, 2025, Zachadnyk executed a written Reversal Agreement expressly confirming that:

a. He never paid the $600,000 required under the SPA;

b. He never acquired any ownership interest in FUNR or its shares; and

c. Willett has 100% of the membership interest in Control Block, and therefore the 5,000,000,000 FUNR shares held by Control Block.

194. The Reversal Agreement constituted a valid transfer instruction under UCC § 8-401 because it:

a. Was in writing;

b. Was executed by Zachadnyk, the only person claiming adverse rights;

c. Required no additional consideration or conditions;

d. Was legally operative and enforceable; and

e. Provided CST with full assurance that Willett was the rightful owner.

195. Willett, directly and indirectly, provided CST with notice and documentation sufficient to trigger CST's obligation to register the transfer.

196. CST wrongfully failed to register the transfer as required.

197. Despite having the Reversal Agreement and knowing the SPA never became effective, CST:

a. Refused or failed to register Willett as 100% owner of Control Block;

b. Refused or failed to update or correct its records to reflect Willett's ownership of the 5 billion FUNR shares;

c. Maintained false or outdated shareholder information;

d. Accepted or enabled the use of inaccurate information in FUNR's public filings; and

e. Allowed Zachadnyk to appear as control person of Control Block even though he had no ownership interest.

198. CST's failure to register the transfer was wrongful within the meaning of UCC § 8-401 because:

a. All conditions for registration were satisfied;

b. CST had reasonable assurance of the validity of the April 7 transfer;

c. CST had no legal basis to refuse registration; and

d. CST's refusal violated commercial reasonableness standards and transfer-agent norms.

199. Willett suffered actual damages as a result of CST's actions and omissions.

200. Willett is entitled to damages and equitable relief.

201. Under UCC § 8-401(b), CST is liable to the rightful owner for losses resulting from its wrongful refusal to register a transfer.

202. Willett seeks:

a. Compensatory and consequential damages;

b. Costs and fees as allowed by law;

c. An injunction compelling CST to register Willett as 100% owner of Control Block and to reflect Control Block as the lawful owner of 5,000,000,000 FUNR shares;

d. Declaratory relief confirming CST's obligations; and

e. Any further relief the Court deems just and proper.

## ELEVENTH CAUSE OF ACTION

## Duty of Good Faith (UCC § 8-404)

## (As to CST)

203. Willett realleges and incorporates all prior paragraphs as though fully set forth herein.

204. CST is subject to the duties imposed by UCC § 8-404.

205. CST is the registered transfer agent for FUNR and performs the issuer's duties relating to the registration, maintenance, and correction of shareholder records.

206. Under UCC § 8-404(a), a transfer agent is liable if it "wrongfully initiates or registers a transfer of a security," or "fails to initiate or register a transfer when obligated to do so," and the transfer agent does not act in good faith or fails to observe reasonable commercial standards.

207. Under § 8-404(b), a transfer agent must act with a) honesty in fact (good faith); and b) reasonable commercial standards of the securities business.

208. CST is also bound by industry-standard transfer-agent duties and SEC regulatory obligations requiring diligence, accuracy, and correction of errors.

209. CST had a clear statutory duty to act in good faith after receiving the Reversal Agreement.

210. CST's conduct does not reflect honesty in fact and violates the basic obligation of good faith imposed by § 8-404.

211. CST failed to observe reasonable commercial standards of the securities business.

212. The securities-transfer industry has well-established standards governing transfer agents – discussed in detail above.

213. CST's failures deviate from the "commercial reasonableness" required under § 8-404.

214. CST's violations of § 8-404 enabled Zachadnyk's fraudulent conduct and caused Willett's harm.

215. CST's lack of good faith and failure to meet commercial standards were substantial factors in Willett's harm.

216. Willett is entitled to damages and equitable relief.

217. Under UCC § 8-404, CST is liable to Willett for all losses resulting from its lack of good faith and failure to follow reasonable standards.

218. Willett seeks:

a. Compensatory and consequential damages;

b. Declaratory relief confirming Willett's ownership;

c. Injunctive relief requiring CST to correct the shareholder ledger;

d. Attorney's fees and costs where recoverable; and

e. Any other relief deemed just and proper.

## TWELFTH CAUSE OF ACTION

## Transfer Agent Liability (UCC § 8-407)

## (As to CST)

219. Willett realleges and incorporates all prior paragraphs as though fully set forth herein.

220. CST performed the issuer's duties relating to registration of securities.

221. FUNR is the issuer of its outstanding shares, including the 5,000,000,000 shares held by Willett through Control Block.

222. CST is FUNR's official transfer agent, and under UCC § 8-407, a transfer agent that performs functions of an issuer with respect to the registration of transfers "has the same obligation to the holder or owner of a certificated or uncertificated security as the issuer has."

223. This means CST is statutorily liable for the issuer's obligations relating to:

a. Registration of transfers;

b. Maintenance of accurate shareholder records;

c. Correction of inaccurate entries;

d. Determination of rightful ownership;

e. Safeguarding shareholder rights; and

f. Ensuring that corporate governance reflects true ownership.

224. CST assumed these statutory issuer duties by:

a. Maintaining FUNR's shareholder ledger;

b. Processing and recording transfers of FUNR securities;

c. Participating in or approving ownership information used in FUNR's regulatory filings; and

d. Acting as the authoritative custodian of FUNR's share registry.

225. As the transfer agent, CST had the same obligations to Willett as to FUNR itself.

226. Under UCC § 8-407, CST is required to:

a. Perform issuer duties with due diligence;

b. Act in good faith toward owners and holders;

c. Correct inaccuracies upon receiving proper documentation;

d. Register valid transfers and reject invalid ones;

e. Provide accurate ownership information to the issuer; and

f. Prevent unauthorized persons from exercising control or governance based on incorrect records.

227. Willett, as the beneficial owners and rightful holders of the five-billion-share majority block, are the intended beneficiaries of these statutory protections.

228. CST breached its statutory issuer duties Under UCC § 8-407.

229. CST breached its statutory duties as alleged throughout this Complaint.

230. CST's failures constitute violations of the issuer duties that § 8-407 imposes on transfer agents.

231. CST's statutory violations directly caused harm to Willett.

232. CST's false records also facilitated violations of federal securities law by enabling material misstatements regarding corporate control.

233. Willett is entitled to damages and equitable relief.

234. Under UCC § 8-407, CST is liable for all damages resulting from its breach of issuer duties.

235. Willett seeks:

a. Compensatory damages;

b. Consequential damages;

c. Costs and attorney's fees where permitted;

d. Declaratory relief confirming CST's obligations;

e. Injunctive relief ordering CST to:

i. Correct its shareholder ledger;

ii. Register Willett as the 100% owner of Control Block LLC;

iii. Reflect Control Block as the lawful owner of the 5 billion shares;

iv. Remove Zachadnyk as control person; and

v. Provide corrected information to FUNR for regulatory filings.

236. Willett also seek any further relief the Court deems just and proper.

## VI. PRAYER FOR RELIEF

Willett respectfully requests the following:

1. Declaration that Willett is the 100% owner of Control Block LLC.

2. Declaration that Willett owns 5,000,000,000 FUNR shares.

3. Declaration that Willett is the majority shareholder of FUNR.

4. Declaration that Zachadnyk holds a 5.35% interest in FUNR.

5. Declaration that Zachadnyk has no ownership interest in Control Block.

6. Declaration that Zachadnyk is not the control person of Control Block.
7. Declaration that the purported merger between FUNR and AsphaltX is void.
8. Rescission of the SPA.
9. Injunction preventing Zachadnyk from:
    a. Announcing or approving any FUNR merger;
    b. Making false ownership or control claims; and
    c. Filing or disseminating misleading information to regulators.
10. Injunction removing Zachadnyk as Chairman and CEO of FUNR and installing Willett as interim Chairwoman and CEO of FUNR.
11. Correction of false SEC filings.
12. Damages according to proof.
13. Attorney's fees and costs of suit where authorized.
14. Further relief as the Court deems just.

Dated: December 4, 2025

RESPECTFULLY SUBMITTED,

/SEAN M. JONES/

SEAN M. JONES, ESQ./LL.M.
Attorney for MARGARET WILLETT